Shirley J. BELL, Plaintiff

v.

PLIVA, INC., Defendant.

Case No. 5:10CV00101 BSM.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Feb. 16, 2012.

Daniel J. McGlynn, McGlynn, Glisson & Mouton, Baton Rouge, LA, Michael R. Rainwater, Robert M. Sexton, Rainwater, Holt & Sexton P.A., Little Rock, AR, William Burton Curtis, Curtis Law Group, Dallas, TX, for Plaintiff.

E.B. Chiles, IV, Robert Ryan Younger, Steven W. Quattlebaum, Quattlebaum, Grooms, Tull & Burrow PLLC, Little Rock, AR, Linda E. Maichl, Matthew V. Brammer, Thomas G. McIntosh, Ulmer & Berne LLP, Cincinnati, OH, for Defendant.

## ORDER

BRIAN S. MILLER, District Judge.

Defendant PLIVA, Inc.'s motion to dismiss the first amended complaint [Doc. No. 64] is granted.

## I. BACKGROUND

Plaintiff Shirley J. Bell filed this action on April 12, 2010, seeking to recover for personal injuries she received after taking the generic prescription drug metoclopramide. Defendants Wyeth LLC, Pfizer, Inc., Schwartz Pharma, Inc., and Alaven Pharmaceutical LLC (hereinafter the "brand-name defendants") moved for summary judgment on the ground that they developed, manufactured, or marketed only the brand-name version of that drug, Reglan, and it was undisputed that Bell ingested only generic metoclopramide. On March 16, 2011, 2011 WL 904161, that motion was granted because Arkansas products liability law requires the plaintiff to show that her injury was caused by a product actually manufactured or distributed by the named defendant. [Doc. No. 47]. Because Bell previously settled her claims with Teva and subsequently filed a stipulation of voluntary dismissal with prejudice, [Doc. No. 44] PLIVA is the only remaining party defendant.

On June 23, 2011, the Supreme Court of the United States issued its opinion in *PLIVA, Inc. v. Mensing,* —— U.S. ——, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011). As will be discussed more fully herein, the *Mensing* decision held that respondents' state-law failure-to-warn claims against generic manufacturers were preempted by federal law. *Id.* at 2572–73.

On September 30, 2011, Bell requested leave to amend her complaint in light of *Mensing* and a recently discovered statement made by PLIVA's counsel while *Mensing* was pending before the Supreme Court. Despite Bell's assertion that defense counsel opposed her request to amend, PLIVA did not file a response in opposition and communicated to chambers that it had no objection to Bell's motion. Leave was therefore granted, and Bell filed her amended complaint on October 19, 2011.

The amended complaint asserts claims for negligence, strict liability, breach of warranties, misrepresentation, suppression of evidence and fraud, and gross negligence. Although the amended complaint refers to the brand-name defendants, those defendants have been dismissed from this action, and to the extent that Bell's amended complaint seeks to reinstate them, those claims are stricken from the pleading.

In its motion to dismiss, PLIVA argues that all of these claims are essentially failure-to-warn claims that are barred by *Mensing.* Bell maintains that her case is distinguishable from *Mensing* because she took metoclopramide after the FDA approved a stronger warning label and PLIVA failed to incorporate this change on its label.

## II. MOTION TO DISMISS STANDARD

Dismissal is proper if Bell's complaint fails to state a claim upon which relief can be granted. *See Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir.2008) (citing Fed.R.Civ.P. 12(b)(6)). Accepting all factual allegations as true, the complaint will be reviewed to determine whether its allegations show that Bell is entitled to relief. *See id.* Although Bell need not prove specific facts in support of her allegations, she must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level. *See id.*

## III. DISCUSSION

PLIVA's motion to dismiss is granted because it could not comply with both Arkansas and federal law.

### A. *The Mensing Decision*

*PLIVA, Inc. v. Mensing* was a consolidated appeal of two separate cases, one from the Fifth Circuit and one from the Eighth Circuit. —— U.S. ——, 131 S.Ct. 2567, 2573, 180 L.Ed.2d 580 (2011). Like *Bell*, the respondents in *Mensing* alleged that they developed tardive dyskinesia after long-term use of metoclopramide and sought to hold the generic manufacturers liable under state tort law. *Id.* The Fifth Circuit held that generic manufacturers could be held liable for failure to warn under Louisiana law, and the Eighth Circuit held that generic manufacturers could similarly be held liable under Minnesota law. *Demahy v. Actavis, Inc.,* 593 F.3d 428, 449 (5th Cir.2010); *Mensing v. Wyeth,* 588 F.3d 603, 614 (8th Cir.2009).

Two competing rules of law framed the dispute in *Mensing.* On one hand, the Court noted that under Minnesota and Louisiana law generic manufacturers had a duty "to adequately and safely label their products." *Id.* at 2577. On the other hand, it recognized that federal statutes and FDA regulations require generic manufacturers "to use the same safety and efficacy labeling as their brand-name counterparts." *Id.* Therefore, the question presented was whether the federal labeling requirements pre-empted state-law tort claims based on a generic manufacturer's failure to warn patients of the risks associated with the use of their drugs. *Id.* at 2573. In answering "yes", the Court applied the doctrine of impossibility preemption.

As the Court noted, impossibility preemption occurs when state and federal law conflict and "it is 'impossible for a private party to comply with both state and federal requirements.'" *Id.* at 2577. The respondents suggested that the generic manufacturers could have asked the FDA to change Reglan's label and that the FDA could have worked with the brand-name manufacturers to implement such a change. *Id.* at 2578. Therefore, the respondents argued, the generic manufacturers "might eventually have been able to accomplish under federal law what state law requires" and that this possibility eliminates impossibility preemption as a defense. *Id.*

The Court rejected this argument by observing that in almost every conflict preemption case, "a third party or the Federal Government *might* do something that makes it lawful for a private party to accomplish under federal law what state law requires of it." *Id.* at 2579 (emphasis in original). It explained: "The question for 'impossibility' is whether the private party could *independently* do under federal law what state law requires of it." *Id.* (emphasis added). Because the respondents could not independently or unilaterally comply with both federal and state law, the Court held that their state law claims were preempted. *Id.* at 2581.

The Court lamented that a plaintiff's recovery depends upon whether her pharmacist dispensed brand-name Reglan or generic metoclopramide. This is because a failure-to-warn claim against the brand-name manufacturer would not be preempted, while a similar claim against a generic manufacture would be. *Id.* at 2581. *See also Wyeth v. Levine,* 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). Based on this Supremacy Clause analysis, the Court reversed the judgments of the Fifth and Eighth Circuits and invited Congress and the FDA to address the problem if they so choose. *Mensing,* 131 S.Ct. at 2582.

## B. *Bell's Amended Complaint*

In her amended complaint, Bell alleges that PLIVA failed to warn her physician that metoclopramide should not be used for more than twelve weeks when it failed to incorporate a 2004 update to the brand-name label on its own labeling. *Id.* ¶ 4.08. She also alleges that PLIVA expressly and impliedly warranted that its metoclopramide was both merchantable and fit for its intended use, that it was unreasonably dangerous, and that all of her injuries proximately stem from PLIVA's breach of these warranties. *Id.* ¶¶ 4.11, 4.14. Bell further alleges that PLIVA made knowingly false representations as to metoclopramide's safety and efficacy with the intent that she would detrimentally rely on those representations. *Id.* ¶ 4.16. In the alternative, Bell alleges that PLIVA omitted, concealed, and suppressed information that obscured the danger of long-term metoclopramide use. *Id.* ¶ 4.21.

There is ample authority supporting PLIVA's position that Bell's newly-styled allegations remain, in essence, failure-to-warn claims that are barred by *Mensing*. *See Fullington v. PLIVA, Inc.,* No. 4:10CV00236 JLH, at 6–8, 2011 WL 6153608, at *4 (E.D.Ark. Dec. 12, 2011) (collecting cases). Bell, however, contends that PLIVA's failure to update its label in 2004 to match that of Reglan's takes her case outside the scope of *Mensing's* preemption holding. Indeed, one court has already accepted this argument. *See Couick v. Wyeth, Inc.,* No. 3:09CV00210 RJC–DSC, at 8, 2012 WL 79670, at *5 (W.D.N.C. Jan. 11, 2012) (holding that a state-law failure-to-warn claim against a generic manufacturer for failure to include updated warnings on the brand-name label was not preempted where the FDA "would have permitted, or even required, such changes").

It is clear that if Bell had taken metoclopramide prior to 2004, her claims would be preempted because there is no allegation that PLIVA's labeling during that time deviated in any way from the brand-name labeling. It is also clear that Bell does not have a federal private cause of action against PLIVA for its alleged failure to include the strengthened 2004 warning on the products dispensed to Bell in 2008. 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 349, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). The only question is whether this alleged failure vitiates PLIVA's defense of impossibility preemption.

■■■ As stated in *Mensing,* Bell's claim is preempted if PLIVA could not "independently do under federal law what state law requires of it." 131 S.Ct. at 2579. Under Arkansas law, a drug warning is adequate so long as it puts a reasonably prudent physician on notice of a particular risk that the manufacturer has actual or constructive knowledge of at the time of distribution. *In re Prempro Products Liability Litigation,* 514 F.3d 825, 830 (8th Cir.2008). Consequently, so long as the physician is properly warned, a drug manufacturer is not required to directly instruct the patient as to its product's risks or safe use. *Id.* This principle is known as the learned intermediary doctrine, and applies to all theories of products liability including negligence, strict liability, and breach of warranty. *Hill v. Searle Laboratories, Inc.,* 884 F.2d 1064, 1070 (8th Cir.1989).

Under federal law, with several notable exceptions, all prescription drug warning information is directed to the physician rather than the patient. 21 U.S.C. § 353(b). *See also* 21 C.F.R. Part 201. As Bell herself noted in an earlier filing, even though a patient might ultimately ingest a generic drug, her doctor will rely

on the warnings and usage indications provided by the brand-name manufacturer. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment, Doc. No. 30, at 13; Plaintiff's Concise Statement of Material Facts, Doc. No. 31, ¶¶ 14–19; Amended Compl., Doc. No. 63, at 5, ¶ 3.11. Further, as discussed at length in *Mensing,* only the brand-name manufacturer can modify the information provided to physicians. 131 S.Ct. at 2575–77, 2581.

 Applying these principles to the facts as alleged by Bell, it is clear that PLIVA may still rely on the defense of preemption despite its failure to incorporate the 2004 label change. To comply with Arkansas law, PLIVA would have needed to communicate with Bell's physician regarding the risks associated with long-term use of metoclopramide. Federal regulations, however, provide that only the brand-name, reference-listed product warning be disseminated to physicians through package inserts or via information published in the Physicians' Desk Reference. Therefore, it was impossible for PLIVA to comply with both Arkansas and federal law, and PLIVA's failure to update its consumer-level warnings does not vitiate its preemption defense.

Two things are apparent. First, but for Arkansas's adherence to the learned intermediary doctrine, Bell's amended complaint would survive the present motion to dismiss. This is because PLIVA's duty to warn would run directly to Bell as opposed to her physician, and PLIVA could have discharged such a duty by complying with the federal requirement of "sameness" and including the strengthened 2004 warning on its consumer-level labeling. Second, this outcome is especially unfair to Bell and other similarly situated plaintiffs. *Mensing,* while perhaps harsh in effect, recognized that PLIVA was at all relevant times complying with federal law. It seems incongruent that its holding still applies even when a generic manufacturer does not comply with federal law, but, in the absence of authority to the contrary, it must.

### IV. CONCLUSION

For all of the reasons set forth above, defendant's motion to dismiss [Doc. No. 64] the amended complaint is granted. An appropriate judgment shall accompany this order.